# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

SEQUOYAH D. QUINTON, )
)
       Plaintiff, )
)
v. ) Case No. CIV-15-466-SPS
)
NANCY A. BERRYHILL, )
Acting Commissioner of the Social )
Security Administration,[1] )
)
       Defendant. )

## OPINION AND ORDER

The claimant Sequoyah D. Quinton requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn W. Colvin as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on November 7, 1969, and was forty-four years old at the time of the administrative hearing (Tr. 41). He has a high school education, some college, and has worked as a private investigator, police officer, dispatcher, and internal security manager (Tr. 42, 55). The claimant alleges that he has been unable to work since October 29, 2007, due to high blood pressure, depression, anxiety, Fuch's dystrophy, and problems with his back, shoulder, neck, and knee (Tr. 141, 171).

### Procedural History

On October 13, 2011, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security insurance payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 (Tr. 136-48). The claimant's applications were denied. ALJ Doug Gabbard, II conducted an administrative hearing, and in a decision dated January 24, 2014, found that the claimant was not disabled prior to December 27, 2012, but became disabled on that date, and continued to be disabled through the date of his decision (Tr. 17-29). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at steps four five of the sequential evaluation. For the period prior to December 27, 2012, the ALJ found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) (Tr. 22-26). Beginning December 27, 2012, the ALJ found that the claimant had the RFC to perform light work with the following limitations: (i) occasional contact with the pubic and understanding, remembering, and completing detailed tasks; (ii) semi-skilled work defined as, work which requires some detail skills, but does not require doing more complex work duties; (iii) interpersonal contact with coworkers and supervisors on a superficial work basis; (iv) ability to alternately sit and stand every fifteen minutes throughout the workday without leaving the workstation; (v) sitting and/or standing no more than four hours total per day, with the ability to lie down the other four hours; and (vi) frequent unscheduled work breaks and work absences (Tr. 26). The ALJ concluded that the claimant was not disabled before December 27, 2012, because he could return to his past relevant work as a security supervisor (Tr. 27). The ALJ then found the claimant disabled as of December 27, 2012, because there were no jobs in the national economy that he could perform (Tr. 28-29).

## Review

The claimant appeals the ALJ's decision as it relates to his impairments and resulting limitations prior to December 27, 2012. The claimant contends that the ALJ's decision for the period prior to December 27, 2012 is against the substantial weight of the evidence, and not based on all of the medical evidence in the record. In support of his

first contention, the claimant asserts that Dr. Schatzman's consultative exam supports a more limited RFC for the period prior to December 27, 2012. The Court finds the ALJ did err in his analysis of Dr. Schatzman's opinion, and the decision of the Commissioner must therefore be reversed and the case remanded to the ALJ for further proceedings.

The ALJ found that the claimant's failed back syndrome, degenerative disc disease of the lumbar spine, and hypertension were severe impairments, and that his right knee injury, Fuch's dystrophy, right shoulder injury, and depression were non-severe (Tr. 20-21). The relevant medical record reveals that on October 29, 2007, the claimant was struck by a vehicle as it was backing up, and thereafter underwent three back surgeries (Tr. 284-304). On March 31, 2008, Dr. Donnie Hawkins removed hardware at L5 and S1 which were placed during a previous back surgery in 2002, performed decompressive laminectomies at L4-5 and L5-S1 due to spinal stenosis, performed a discectomy at L4-5 due to a herniated disc, and performed a fusion with instrumentation at L4-5 due to instability (Tr. 464-85). On January 26, 2009, Dr. Hawkins removed the hardware placed in March 2008, performed decompressive laminectomies with foraminotomies at L4-5 and L5-S1 due to recurrent stenosis, excised pseudoarthritis at L4-5, and re-fused L4-5 due to non-union (Tr. 408-25). On March 24, 2010, Dr. Hawkins removed the hardware placed in January 2009 because the claimant remained symptomatic (primarily over the implants) despite a solid fusion above L4-5 and L5-S1, intact hardware at L4-5, full decompression at L4-5 and L5-S1, and no evidence of psuedoarthritis, herniation, or stenosis (Tr. 358-72).

Dr. Ronald Schatzman performed a physical consultative examination on January 17, 2011 (Tr. 348-54). Dr. Schatzman found, *inter alia*, that the claimant had reduced range of motion in his lumbosacral spine with pain and muscle spasm, but that his cervical spine and thoracic spine were non-tender with full range of motion (Tr. 350). Dr. Schatzman also noted the claimant's heel and toe walking were weak, and that his balance appeared decreased (Tr. 350). As to the claimant's gait, Dr. Schatzman observed the claimant was moderately unsteady, careful, and had an antalgic limp on his right leg (Tr. 350). He observed the claimant had difficulty getting up and down from a chair, and had pain when getting up on the exam table and bending down to put his shoes on (Tr. 350). Dr. Schatzman opined that the claimant would be safer using a cane, and that he was severely impaired from activities of daily living (Tr. 350).

On May 20, 2011, the claimant presented to Dr. David Nonweiler for right shoulder pain (Tr. 539-42). On physical exam, Dr. Nonweiler found that the claimant had reduced range of motion in his shoulder, and moderate pain and tenderness with testing (Tr. 540-41). Dr. Nonweiler reviewed an MRI of the claimant's right shoulder conducted the week before, and noted it revealed acromioclavicular joint arthropathy (Tr. 541). The claimant underwent a right shoulder arthroscopy with open clavicle excision on June 2, 2011 (Tr. 553).

The claimant presented to Dr. John Main on June 13, 2011, for an evaluation of his back pain and right leg pain (Tr. 660-61). Dr. Main noted the claimant's motor exam was non-focal with no pathological reflexes or loss of sensation, and that he had good distal pulses (Tr. 660). Dr. Main further noted the claimant had a positive straight leg

raise on the right, but that his gait was normal (Tr. 660). He ordered a CT scan of the claimant's lumbar spine, the results of which revealed a stable fusion at L4-5 and L5-S1, but severe facet degeneration at that same level (Tr. 660-61). Dr. Main recommended facet blocks at L3-4 and right selective S1 nerve root injection, as well as continued conservative therapy (Tr. 661).

On May 12, 2011, the claimant presented to Dr. Hugo Salguero and reported chronic low back pain, right shoulder pain, and right knee pain (Tr. 672-74). Dr. Salguero noted the claimant had full strength in his lower extremities, a positive straight leg test on the right, and muscle spasms in his lumbar spine (Tr. 673-74). He recommended epidural steroid injections which the claimant did undergo, and prescribed narcotic pain medications (Tr. 666-71, 674, 742-52, 765-90).

On December 4, 2012, the claimant reported increased back pain that began the previous month, and indicated his medications were no longer effective (Tr. 775). Dr. Andrew Revelis ordered a lumbar spine MRI, the results of which revealed postsurgical changes at L5 through S1 without evidence of neural compression at these levels; moderate generalized disc bulge at L3-L4 with mild central canal and left neural foraminal stenosis; and fatty hyperplasia at L4 through S1 (Tr. 763, 775-76). In March 2013, the claimant reported medications and steroid injections were not controlling his pain, but in June 2013 the claimant reported the injections were once again beneficial, although not as much as they had been previously, and he was stable on medications (Tr. 783). The claimant continued treating with narcotic pain medications until September 2013, when he was admitted to Brookhaven Hospital for ten days of treatment

for opioid dependence (Tr. 822-39). On October 3, 2013, the claimant reported his pain had increased somewhat since stopping the pain medications, but that he wanted to manage his pain without opiates, and wanted to continue with injection therapy due to its significant benefit for him (Tr. 787).

At the administrative hearing, the claimant testified as to his past work history, his impairments, and his medical treatment (Tr. 35-59). He stated his standing and walking limitations prevented him from working (Tr. 47). More specifically, the claimant testified that he is unable to climb stairs; has difficulty balancing due to pain and numbness in his leg; has not stooped, kneeled, or crawled since his accident and subsequent surgeries; and alternates between sitting and standing throughout the day every fifteen minutes, but usually spends fifty-five to sixty percent of his day lying down (Tr. 47-48). As to his medications, the claimant testified that he was not taking any prescription pain medication, but received epidural steroid injections and used over-the-counter medications (Tr. 50-51).

In his written decision, the ALJ summarized the medical evidence, including the claimant's hearing testimony, and a Third Party Function Report submitted by the claimant's father. At step two, he discussed the claimant's impairments, explaining those he deemed severe and those he deemed non-severe (Tr. 44). In determining the claimant's right knee injury, Fuch's dystrophy, right shoulder, and depression were non-severe, the ALJ noted no treating, examining, or reviewing medical source indicated that related limitations were present, and that his care had been conservative (Tr. 20). For the period prior to December 27, 2012, the ALJ gave great weight to the state agency

reviewing physicians' opinions that the claimant could perform the full range of light work because their opinions were consistent with unspecified evidence in the record. He then gave limited weight to the Third Party Function Report because the claimant's father was not medically trained or a disinterested third party, and because his report was not consistent with the preponderance of the opinions and observations by the medical sources. The ALJ noted Dr. Schatzman's examination findings, but did not provide any analysis, including no explanation for disregarding his statements regarding the claimant's ability to get up and down, bend, balance, ambulate, and perform activities of daily living, nor did he assign any weight to his assessment (Tr. 24-25). For the period beginning December 27, 2012, the ALJ discussed the medical evidence, particularly claimant's December 2012 MRI, and noted that it showed "post-surgical changed at L5-S1 without evidence of neural compression as these levels, moderate generalized disc bulge at L3-L4 with central canal and <u>left neural foraminal</u> stenosis, and fatty hyperplasia at L4-S1." [emphasis in the original] (Tr. 26-27). He further noted Dr. Revelis found the claimant was tender to palpation in the paraspinous muscles bilaterally with palpable muscle spasms, and ambulated with a cane at his December 2012 exam (Tr. 27). He then concluded that "new medical evidence supports finding that the claimant cannot sit or stand more than four hours per day, has to lie down the other four hours, and will need frequent work breaks and work absences." (Tr. 27). Accordingly, the ALJ found the claimant not disabled prior to December 27, 2012, but disabled thereafter based on the evidence, particularly the December 2012 MRI (Tr. 27-29).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors are: (i) the length of treatment relationship and frequency of examination; (ii) nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Here, the ALJ summarized Dr. Schatzman's report, but provided no analysis at all in relation to the pertinent factors. Additionally, the ALJ adopted Dr. Schatzman's findings regarding the claimant's thoracic spine, cervical spine, and lower extremities, but entirely ignored his opinions as to the claimant's ability to get up and down, bend, balance, ambulate, and perform activities of daily living (Tr. 24). It was error for the ALJ to "pick and choose" in this way, *i. e.*, to cite findings supportive of his own determination while disregarding unsupportive findings. *See, e. g., Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and

choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler,* 742 F.2d 382, 385–86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper."). In addition to evaluating Dr. Schatzman's findings according to the appropriate standards and indicating what weight he was assigning to them, the ALJ should have explained why he found certain aspects of Dr. Schatzman's findings persuasive but not others. *See Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others. An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability. . . . [T]he ALJ did not state that any evidence conflicted with Dr. Rawlings' opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of Dr. Rawlings' restrictions but not others.").

Because the ALJ failed to properly evaluate Dr. Schatzman's opinion, the decision of the Commissioner should therefore be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence.

Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 28th day of March, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**